## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**MADISON MCKINNEY,**

              **Plaintiff,**

**v.**                                **Case No. 4:21-cv-00205-JFH-JFJ**

**STEPHEN WULFECK, et al.,**

              **Defendants.**

### OPINION AND ORDER

On January 26, 2023, Defendant Lyft, Inc. ("Lyft") filed its Motion to Bifurcate ("Motion") asking the Court to potentially conduct two trials in this matter: One trial to determine whether Defendant Stephen Wulfeck ("Wulfeck") is liable for injuries to Plaintiff Madison McKinney ("McKinney") and, if so, another trial to determine whether Wulfeck's conduct can be attributed to Lyft. Dkt. No. 62 at 3. McKinney failed to file a timely response to the Motion. He has since filed a motion seeking permission to file a belated response, which Lyft opposes. *See* Dkt. No. 71; Dkt. No. 74. For the reasons set forth herein, Lyft's Motion to Bifurcate [Dkt. No. 62] is DENIED, and McKinney's Motion for Leave to File a Response Out of Time [Dkt. No. 71] is DENIED AS MOOT.

### BACKGROUND

This case arises out of an automobile accident that occurred in Tulsa County, Oklahoma, in April of 2019. According to the Amended Petition,[1] Wulfeck was working as a driver for Lyft when his automobile collided with McKinney's vehicle. Dkt. No. 2-2 at ¶¶ 5-6. McKinney alleges that Wulfeck was operating his vehicle in a negligent manner at the time of the collision, that Lyft

---

[1] Lyft's characterization of the events giving rise to this action differ markedly from the allegations in McKinney's Amended Petition. *See* Dkt. No. 62 at 1; Dkt. No. 14 at 1 (Summary of Defenses).

allowed Wulfeck to negligently operate his vehicle in public, and that Lyft was negligent in its

hiring, training, and supervision of Wulfeck.  *Id.* at ¶¶ 5, 7.  McKinney seeks actual and punitive

damages from Defendants.  *Id.* at ¶¶ 8-11.

      The claims against Wulfeck and Lyft have been pursued, and defended, together from the

outset.[2]  Lyft now asks the Court to potentially conduct two separate trials on the question of

liability:  The first trial would address whether Wulfeck was negligent in the operation of his

vehicle and caused any damages to McKinney; the second trial would address only whether Lyft

may be held liable for any negligence of Wulfeck.  According to Lyft, McKinney's injuries are not

significant enough to exceed Lyft's $1 million insurance policy procured under the Oklahoma

Transportation Network Company Act.  Dkt. No. 62 at 2.  Therefore, Lyft argues, the adjudication

of McKinney's claims against Wulfeck may effectively resolve the dispute, rendering the second

trial unnecessary.  *See id.* at 2.  Lyft claims that this result—if it occurs—would serve the interests

of justice, fairness, and economy.

## ANALYSIS

      The question of whether a dispute should be bifurcated into two separate proceedings is

committed to the discretion of this Court.  *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th

Cir. 1985).  "Separate trials of claims properly joined is not the usual course."  *Comeau v. Rupp*,

810 F. Supp. 1127, 1167 (D. Kan. 1992).  Nevertheless, a motion to bifurcate may be granted if

separate trials would serve the interests of convenience, economy, efficiency, or the avoidance of

prejudice.  *See* Federal Rule of Civil Procedure 42(b) (providing that a court may order separate

trials of one or more separate claims "[f]or convenience, to avoid prejudice, or to expedite and

---

[2]  Lyft filed its Motion to Bifurcate after the deadline for serving discovery had passed, and after
the Parties' dispositive motions, *Daubert* motions, and deposition designations had been filed.

economize"). The burden of establishing that these interests warrant separate trials rests solely on the party seeking bifurcation. *Cox v. Swift Transportation Co. of Arizona & LLC*, No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887, at *4 (N.D. Okla. Aug. 7, 2019).

When evaluating whether bifurcation is appropriate, this Court considers the following factors: (1) whether the issues are separable; (2) the convenience and economic benefit of bifurcation; and (3) whether bifurcation would serve the interest of fairness. *See, e.g., Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993) (separately evaluating convenience and economy, separability, and fairness when affirming the district court's order directing liability and damages to be tried in reverse bifurcation format). Each of these factors is significant to the Court's analysis, but the third factor should be afforded particular attention, as it is an abuse of discretion to order bifurcation when doing so would result in prejudice to any party. *Id.* at 964.

The claims against Wulfeck are linked with those asserted against Lyft. Under the doctrine of *respondeat superior*, Lyft will be found liable only if the jury concludes that (a) Wulfeck is liable for the underlying negligence, and (b) Wulfeck was acting within the scope of his authority or employment as an agent of Lyft at the time of the accident. *See Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) (recognizing that the doctrine of *respondeat superior* holds a principal liable for the torts of agents acting within the scope of their authority, even if the principal is otherwise blameless); Vernon's Okla. Forms 2d, OUJI-CIV 7.5 (2d ed.).[3] Similarly, the theory of negligent hiring and entrustment permits McKinney to recover from Lyft if he can show that Lyft had "prior knowledge of [Wulfeck's] propensity to commit *the very harm for which damages are sought.*" *N.H. v. Presbyterian Church (U.S.A.)*, 1999 OK 88, ¶ 20, 998 P.2d 592, 600 (emphasis added). Under either theory, McKinney's claims against Lyft are tied to, and cannot be

---

[3] The Parties agree Oklahoma law governs this matter. *See* Dkt. No. 33 at 9; Dkt. No. 31 at 6.

established without, a determination of Wulfeck's liability.  The overlap of the claims against Wulfeck and Lyft weighs in favor of trying these claims together.  *See*, *e.g., Rustgi v. Reams*, 536 F. Supp. 3d 802, 827 (D. Colo. 2021) (declining to "bifurcate the individual liability discovery or trial from that related to entity liability" where there was "close connection and overlap between the individual and entity liability claims").[4]

The second factor—the convenience and economic benefit of bifurcation—also weighs against holding two separate trials.  In general, a single trial is the most efficient and convenient way of resolving properly joined claims.  *See Cox*, 2019 WL 3719887, at *4.  Although Lyft *might* save time and resources by sitting out of the first proposed first trial—and evaluating whether to settle based upon the results of that first trial—the same cannot be said for McKinney, Wulfeck, or this Court, all of whom could be called upon to participate in multiple trials concerning a single accident.  *See Sterling Const. Mgmt., LLC v. Steadfast Ins. Co.*, 280 F.R.D. 576, 580 (D. Colo. 2011) (noting that, while bifurcation "would presumably achieve a degree of economy for" one defendant, at least one other party would bear the expense of "participat[ing] in two trials and . . . call[ing] witnesses twice").[5]  Because the claims against Wulfeck are linked to the claims against Lyft, there is a strong likelihood that the Parties would call, and the Court would hear, at least some

---

[4]  *See also*, *e.g., Valdez v. Motyka*, No. 15-cv-0109-WJM-STV, 2020 WL 3963717, at *17 (D. Colo. July 13, 2020) (denying motion to bifurcate where the plaintiff's municipal liability claims were "closely connected" to his claims against the individual officer-employee).

[5]  *See also McCarty v. Liberty Mut. Ins. Co.*, No. 15-CV-210-KHR, 2016 WL 8290149, at *3 (D. Wyo. May 6, 2016) (declining to bifurcate where bifurcation would require presenting facts multiple times, would "require additional time for jurors to deliberate," and would result in additional costs).

witnesses twice.[6]  Such a result does not promote economy or efficiency, particularly where a single trial of all issues against all defendants is projected to take only a few days.  *See Racher v. Lusk*, No. CV 13-665-M, 2015 WL 9413886, at *2 (W.D. Okla. Dec. 22, 2015) (declining to bifurcate trials where doing so would "result in two duplicate trials with the same witnesses and evidence being presented"); *Skyline Potato Co. v. Tan-O-On Mktg., Inc.*, No. CIV 10-0698 JB/RHS, 2012 WL 2384087, at *12 (D.N.M. June 12, 2012) (recognizing that "[j]udicial economy is not served by separate trials, because it would be inconvenient and wasteful for the Court to hear the same testimony from witnesses twice," particularly where a combined one-week trial would not take "a great deal of the Court's time").[7]

---

[6]  Lyft concedes that at least Wulfeck would likely be called to testify in the second trial, after the claims against him are conclusively resolved.  Dkt. No. 62 at 6.

[7]  It is now well-known that this Court has experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020), which held that while Congress had diminished the Creek reservation in Eastern Oklahoma, it had never formally disestablished it.  This imposed federal "jurisdiction over the apprehension and prosecution of major crimes by or against Indians in a vastly expanded Indian Country." *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 692 (Okla. Crim. App. 2021).  *McGirt*'s holding was later extended to other reservations as well.  As Chief Justice Roberts recognized in his *McGirt* dissent, "the share of serious crimes committed by 10%–15% of the 1.8 million people in eastern Oklahoma, or of the 400,000 people in Tulsa, is no small number."  140 S.Ct. at 2501.  The practical effect of *McGirt* was an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District of Oklahoma and more than 400% in the Eastern District of Oklahoma.  *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects.  Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt. Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022).  And numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, --- F. Supp. 3d ---, 2022 WL 1948762, at *7 (E.D. Okla. Apr. 29, 2022) (collecting cases).  The dramatic increase in criminal caseloads because of *McGirt* has resulted in strained judicial resources across numerous areas, two of which are particularly relevant here.  First, the Northern District of Oklahoma is allocated three and a half full-time district judges but, due to unfortunate and unforeseeable circumstances, has been operating with only one and a half active district judges in the tsunami of *McGirt*.  Moreover, the undersigned is the half-time judge in the Northern District due to his multi-

Lyft argues that there may be no need for the Court to hear multiple witnesses or hold multiple trials, because the first trial might obviate the need for the second. *See* Dkt. No. 62 at 4-6. Specifically, Lyft claims that *if* the verdict is below a certain amount, *then* there will be no need to hold a trial on the *respondeat superior* claims at all, and that *if* the verdict exceeds that amount, *then* Lyft may settle. *Id.* But Lyft points to no authority supporting its claim that bifurcation is proper in a case such as this one, where there are multiple theories of recovery asserted against a principal who allegedly employed a negligent agent, and where claims for punitive damages remain pending. *See* Dkt. No. 2-2 at ¶ 8.[8] Moreover, Lyft's claim that the first trial could, under the right circumstances, eliminate the need for a second trial invites this Court to make assumptions about the verdict that a jury might reach, and the settlement decisions Lyft might make if the first trial does not go as expected. Any benefit by these hypothetical scenarios is, at best, speculative, and does not outweigh the very real costs of holding two separate trials. *Baros v. Sentry Ins.*, No. 11-CV-02487-LTB-KLM, 2012 WL 846706, at *2 (D. Colo. Mar. 12, 2012) (concluding the moving party's arguments did not compel bifurcation "in light of the possible costs and redundancies bifurcation may wrought," which outweighed any "speculative and marginal" benefits). It was Lyft's burden to demonstrate that bifurcation *would* promote efficiency and economy. *Cox*, 2019 WL 3719887, at *4. Lyft has failed to meet that burden.

---

district caseload—a caseload which includes the Eastern District of Oklahoma, which has had a proportionally even larger onslaught of criminal cases since July 2020. Needless to say, it is a bold proposition to ask this Court to consider conducting two separate trials in one civil case.

[8] Lyft did attach a state-court opinion in support of its position that bifurcation is appropriate. *See* Dkt. No. 62-1 (the "Ohio Order"). Contrary to Lyft's suggestion, the referenced opinion does not involve the "exact circumstances" presented here. Dkt. No. 62 at 2. The Ohio Order concerned defendants who conceded that the agent-driver "caused the accident that caused [the] [p]laintiff's injuries." Dkt. No. 62-1 at 2. There was, consequently, no need for the first-phase trial that Lyft is asking for in this case; the "need for a trial on the issue of liability" was rendered "non-existent" by the defendants' stipulation as to the agent's liability. *Id.* There is no such stipulation here.

Turning to the final factor, the potential for prejudice, Lyft claims that both Defendants could be prejudiced by a joint trial, as the jury may be swayed by the belief that Wulfeck is employed by a "'big company' with 'deep pockets,'" or by bias against Lyft as a general matter. Dkt. No. 62 at 6. Assuming this risk does exist, it is routinely present in cases where principals and agents jointly defend claims arising out of the agent's alleged torts. "[S]uch prejudice can be mitigated through the jury instructions and verdict form." *Est. of Melvin by & through Melvin v. City of Colorado Springs, Colorado*, No. 20-CV-00991-CMA-KMT, 2021 WL 50872, at *3 (D. Colo. Jan. 5, 2021).[9]

## CONCLUSION

Taking all the above factors into account, the Court concludes that this is a straightforward case that should involve a single trial. Dividing this case into multiple trials would increase the cost and burden to everyone except for Lyft, and the speculative benefits of bifurcation do not justify that cost. Precautionary measures, and appropriate jury instructions, will alleviate any undue prejudice associated with permitting the claims against Wulfeck and Lyft to be tried together. Any remaining prejudice will be outweighed by the economic and practical benefits of holding a single trial on all claims arising out of the automobile accident that forms the basis for all of McKinney's claims.

---

[9] This is not a case where the risk of prejudice is so great that proceeding in a single trial would be fundamentally unfair to one or more parties. *Cf. Barr v. City of Albuquerque*, No. 12-CV-01109-GBW/RHS, 2014 WL 11497832, at *1 (D.N.M. Oct. 16, 2014) (recognizing that bifurcation was proper where certain significant evidence was "admissible on the negligent supervision claim [but] inadmissible as to all other claims," and bifurcation would eliminate the "significant problem of unfair prejudice resulting from introducing evidence admissible on one claim yet totally inadmissible on all others").

IT IS THEREFORE ORDERED that Defendant Lyft, Inc.'s Motion to Bifurcate [Dkt. No. 62] is DENIED.  Plaintiff Madison McKinney's Motion for Leave to File a Response Out of Time [Dkt. No. 71] is DENIED AS MOOT.

Dated this 14th day of April 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE